**Hummel v. Buckeye Bd. of Edn.**
**Case No. 1787**
**Medina County, (9th)**
**Decided January 10, 1990**
[Cite as 1 AOA 314]

*Dean Holman, Prosecuting Attorney, 135 S. Jefferson St., Medina, Oh., 44256 for plaintiff.*

*Cornelius J. Baasten, Attorney at Law, the Belden/Whipple Bldg., 1450 Belden Village St., #102, P. O. Box 35186, Canton, Oh., 44735 for Defendant.*

BAIRD, J.

This cause comes before the court upon the

appeal of plaintiff Linda Kreighbaum from the judgment of the Medina County Court of Common Pleas in favor of defendant-appellee, Buckeye Local School District Board of Education, on plaintiff-appellant's claim for back pay and corresponding benefits allegedly due her as a result of appellee having placed her on a salary-schedule step lower than that to which she was entitled pursuant to R.C. 3317.13 and R.C. 3317.14.

R.C. 3317.13 reads, in pertinent part:

"(A) As used in this section:

"(1) 'Years of service' includes the following:

"(a) All years of teaching service in the same school district, regardless of training level, with each year consisting of at least one hundred twenty days under a teacher's contract;

"(b) All years of teaching service in a chartered, nonpublic school located in Ohio as a teacher certified pursuant to section 3319.22 of the Revised Code or in another public school, regardless of training level * * *.

"(B) No teacher shall be paid a salary less than that provided in the schedule set forth in division (C) of this section. In calculating the minimum salary any teacher shall be paid pursuant to this section, years of service shall include the sum of all years of the teacher's teaching service included in divisions (A) (1) (a), (b), (c), and (d) of this section; except that any school district employing a teacher new to the district shall grant such teacher a total of not more than ten years of service pursuant to divisions (A) (1) (b), (c), and (d) of this section.

"* * *.

"Each teacher shall be fully credited with placement in the appropriate academic training level column in the district's salary schedule with years of service properly credited pursuant to this section or section 3317.14 of the Revised Code. No rule shall be adopted or exercised by any board of education which restricts the placement or the crediting of annual salary increments for any teacher according to the appropriate academic training level column."

"* * *."

This statute sets forth standards for determining years of service for teaching and related service for both in-district and out-of-district experience, and further establishes a minimum pay scale based on years of service and training. The statute limits to a maximum of ten years the credit that can be given for experience outside a school district for a teacher newly hired in that district. It requires that a teacher be fully credited in the district's salary schedule both with placement at the appropriate academic training level, and with years of service properly credited pursuant to its own provisions -- or those of R.C. 3317.14.

R.C. 3317.14 reads in pertinent part:

"Any board of education participating in funds distributed under Chapter 3317. of the Revised Code shall annually adopt a teachers' salary schedule with provision for increments based upon training and years of service. Notwithstanding section 3317.13 of the Revised Code, the board may establish its own service requirements provided no teacher receives less than the amount required to be paid pursuant to section 3317.13 of the Revised Code and provided full credit for a minimum of five years of actual teaching and military experience as defined in division (A) of section 3317.13 of the Revised Code is given to each teacher."

"* * *."

This statute allows a school board to establish its own years-of-service requirements, provided that each teacher receives the minimum salary required for years of service and training level as calculated under R.C. 3317.13, and provided that each teacher receives full credit for a minimum of five years of actual prior service. See *Rauhaus* v. *Buckeye Local School Dist. Bd. of Edn.* (1983), 6 Ohio St. 3d 320. Thus, R.C. 3317.14 allows a school board to limit credits for years of outside service, provided its explicit condition met: 1) that no teacher receive less than the minimum salary required under the provisions of R.C. 3317.13; 2) that each teacher be credited with at least five years of service on the district's salary schedule; and 3) that the district's own service requirements be properly established. See *Basler* v. *Princeton City School Dist. Bd. of Edn.* (May 6, 1981), Hamilton App. No. C-800305, unreported; *Goldman* v. *Princeton City School Dist. Bd. of Edn.* (Nov. 25, 1981), Hamilton App. No. C-800810, unreported. Absent the proper

establishment of its own service requirements within the meaning of R.C. 3317.14, full credit for years of outside experience must be granted under the provisions of R.C. 3317.13. *Id.*

Appellant Hummel was initially hired by appellee school board on June 10, 1980, on a one-year teaching contract. Appellant had eleven-and-a-half years of prior teaching experience outside of the Buckeye school district; accordingly she was credited on the contract as having ten years of "other experience for schedule". This, according to appellee, was solely for purposes of determining her minimum salary as required under R.C. 3317.13. Appellant was then placed on "step six" of the district's salary schedule, which corresponded to six years of total prior experience. As appellee explained, this reflected the five-year minimum of credit required by R.C. 3317.14, with an additional year granted as an inducement to appellant because of her special skills.

Appellant's employment was suspended before the 1981-82 school year as part of a reduction in force; she was recalled for the 1983-84 school year, and has remained employed since. In the 1983-84 contract, appellant was again credited with ten years of other experience, and with one year of Buckeye experience, for eleven "total years for schedule". As the school board had a policy -- written into the master agreement between the school board and the teachers -- to give full credit for each year of Buckeye service, appellant was placed on step seven of the district's salary schedule. For each year since, appellant was credited with an additional year of Buckeye experience, and then placed at the next step on the salary schedule.

Appellant brought suit seeking a declaratory judgment that she had been entitled to placement on step ten of the district's salary schedule when initially hired in 1980, pursuant to R.C. 3317.13, claiming that the school board had failed to establish its own service requirements within the meaning of R.C. 3317.14. She sought an award of back pay and retirement contributions, from the 1983-84 school year to date, that were lost as a result of her misplacement on the district's salary schedule in 1980.

Appellee claimed that it had established its own service requirements pursuant to R.C. 3317.14, and that it was thus exempt from the requirements of R.C. 3317.13.[1] Accordingly, appellee claims, its procedure was to first determine the number of years of outside experience, then find the minimum salary required for these years of service under R.C. 3317.13 (C), and finally to place the teacher on its own salary schedule at the first step level that exceeded the statutory minimum. Though they are in dispute over its existence as established policy prior to this point, both parties agree that this procedure was formally established as policy on August 12, 1980, at a public meeting of the board.[2] The trial court found, as appellee claimed, that this policy had been established and in operation at the time appellant was hired on June 10, 1980, though it had been unwritten and without formal approval by the board until August 12, 1980.

Appellant assigns three errors on appeal.

### ASSIGNMENTS OF ERROR

"1. The trial court committed prejudicial error in finding that, prior to the hiring of appellant, appellee board had adopted a policy for placement on its salary schedules of teachers with prior teaching experience outside of the Buckeye Local School District.

"2. The trial court's findings are against the manifest weight of the evidence.

"3. The trial court committed reversible error in granting judgment for appellee Board where Ohio Revised Code Section 3317.13 requires appellee Board to grant appellant ten years service credit for prior teaching experience of ten years or more and where appellee Board did not adopt its own service requirements pursuant to Ohio Revised Code Section 3317.14 until two months after hiring appellant as a teacher in the school district."

As all three assignments of error are effectively variations of a single claim of error, we consider all three together. The only issue before us, then, is whether the trial court's holding was against the manifest weight of the evidence in finding that appellee school board had established its own service requirements within the meaning of R.C. 3317.14 at the time appellant was initially hired.

There is a heavy presumption against disturbing a finding by the trier of fact upon a full trial on the merits. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E.*

*Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio 2d 279, syllabus. Nevertheless, upon review of the record in this case, we find that the ruling in favor of appellee school board was against the manifest weight of the evidence.

The issue here is virtually identical to the issue in *Basler* v. *Princeton City School Dist. Bd. of Edn., supra.* In that case, a teacher had been placed on a salary level lower than that to which she was entitled, as the result of an unwritten administrative practice regarding such placement. The court cited several factors relevant to an inquiry into whether such an unwritten practice was "established" for purposes of R.C. 3317.14. These include: how the practice came in to being, who was responsible for its development, how uniformly the practice had been applied in the past, and whether there was knowledge of the practice among the district's teachers in general, and the complaining party in particular. Based on these factors, the *Basler* court held that the school board had failed to establish its own requirements within the meaning of R.C. 3317.14 -- despite evidence stipulated to by both parties that this practice had been followed for "a number of years" prior to Basler's hiring -- and that full credit for each year of experience was thus required under R.C. 3317.13.

Applying the above factors to the present case, we find first that there is no evidence of how or when this purported policy came into being, or of who was responsible for its development. The testimony of appellee's own witnesses at trial, the school superintendent and a member of the board, is in direct contradiction to appellee's position. Dr. Gesinsky, the school superintendent, testified on cross-examination:

"Q. Mr. Gesinsky, when were you hired by the Buckeye Local School District?
"A. First day of employment was April 14, 1980.
"Q. And at the time that you were hired by Buckeye Local School District Board of Education, were you advised of any policy by the Board of Education with respect to having new employees and their placement on the salary schedule?
"A. I was well aware that there was no policy that addressed it specifically; was aware that the statute prevailed.
"* * *.
"Q. Is there anything in any agreement, whether master agreement or Board policy, that specifically addressed how many years of experience you had to give a teacher with outside experience?
"A. Not to my knowledge. There were only two items in the master agreement. One specified that all prior years of Buckeye service would have to be granted, presumably upon rehiring, and for each two thousand hours of tutoring.
"Q. So with respect to those teachers who were outside, who had outside experience when they were employed, they were controlled by Ohio Revised Code Section 3317.13 and 3317.14?
"A. And Board policy.
"Q. And the Board policy you're referring to is the one that was adopted on August the 12th, 1980?
"A. Right.
"Q. Which was after Miss Hummel was hired, correct?
"A. Right."

Mr. Dalgleish, a school board member, testified on cross-examination:

"* * *.
"Q. Mr. Dalgleish, You've indicated that the Board didn't have any policy in effect requiring that individual be given year-to-year experience for non-Buckeye teaching.
"Prior to the August 20th, (sic) 1980 date, did the Buckeye Local School District have any policy in effect with respect to crediting for outside teaching experience that was not Buckeye teaching experience?
"A. Not to my knowledge."

As for the next factor -- the uniformity of application of the policy in the past -- there is no evidence in the record of any past hiring practices. The only evidence offered to the court was of the placement on the salary schedule of teachers who had been hired after the appellant, and after the formal adoption of the policy on August 12, 1980.

On the question of whether there was general knowledge of this policy among the other teachers in the district, the trial court looked to the master agreement between the school board and the teachers. This agreement contains an express provision that year-for-year credit must be given for Buckeye experience, but is silent about credit for outside experience. To construe the absence of any expression of policy as somehow establishing the policy at

issue here, or as somehow giving notice of its existence to the district's teachers, is untenable. Whatever the ambiguities that may attach to the term "establish" in the context of R.C.3317.14, it is clear that a government agency such as a board of education can establish policies or requirements only by an affirmative act of *some* kind, whether it be formal or informal. See *Starcher* v. *Logsdon* (1981), 66 Ohio St. 2d 57, 61; *Robinson* v. *Swing* (1939), 70 Ohio App. 83, 91-92. As stated *supra*, without such an affirmative act that establishes service requirements pursuant to R.C. 3317.14, the provisions of R.C. 3317.13 apply.

As for appellant's awareness of the purported policy, the record shows only that she was aware that she was not to be given year-for-year credit for outside experience because, as the school superintendent told her, the law did not require it. At best, the superintendent's testimony in this regard goes only to show that it was the practice of the school board to pay only the minimum required by the statutes, as it construed them. As did the court in *Basler*, we reject the notion that such an unarticulated and informal practice sufficiently establishes service requirements for purposes of R.C. 3317.14.

The manifest weight of the evidence is clearly in support of appellant's contention that no policy regarding service credits for outside experience as contemplated in R.C. 3317.14 had been established at the time of appellant's hiring, and is thus contrary to the finding and judgment rendered by the trial court. We therefore reverse, and find that appellant was entitled to be placed on step ten of the Buckeye Local School District's salary schedule for the 1980-81 school year, and that appellant should have been advanced accordingly on the salary schedule for each subsequent year of employment.

As the trial court did not reach the issue of damages, and as the evidence before this court is insufficient to make such a determination ourselves, we remand to the trial court for a determination of the back pay and corresponding benefits due appellant, such determination to be consistent with this opinion and the law.

Judgment reversed and remanded for further proceedings consistent with this opinion.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Medina Common Pleas Court to carry this judgment into execution.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

CACIOPPO, P.J. Concurs

REECE, J. Dissents saying:

I dissent. I believe there is sufficient, credible evidence to support the trial court's findings of fact and judgment. I would affirm that judgment.

In addition, I am troubled by the facts of this case. This appellant-teacher was first hired under the terms of the school board's policy in June, 1980. Because she was "dual-certified" in math and science, she was "recruited" by the appellee. Apparently, she would have had little difficulty finding a teaching position elsewhere. She was initially employed at a salary level which must have attracted her and to which she did not object. She was laid off the next school year, and when she returned under a new contract, once again she didn't protest the terms. Her lawsuit was not filed until August, 1986. She taught continuously.

What we have now, by this majority opinion, is a situation where the school board will have to pay a sizeable amount of money which, I'm sure, like most school boards, it can ill afford, long after the fact, in 1990. There is entirely too much of this legal machination at the taxpayers' expense in our systems and institutions.

---

[1] Appellee's alternate assertion -- that R.C. 3317.13 does not require year-for-year crediting for outside experience when R.C. 3317.14 does not apply -- is without merit in light of the express language of R.C. 3317.13 (B) and the cases cited in our discussion, supra.

[2] That policy statement reads: "Teachers shall be properly placed on the salary schedule as per the requirements of 3317.13 of the Ohio Revised Code. The Superintendent may recommend credit for experience beyond the minimum specified in the code in cases of special need for the district.