[Cite as *State v. Stutler*, 2018-Ohio-1619.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JEREMY STUTLER | : | Case No. 2017CA00094 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Stark County Court
                                  of Common Pleas, Case No. 2011-
                                  CR-1169




JUDGMENT:                         Affirmed




DATE OF JUDGMENT:                 April 24, 2018




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           MICHAEL A. PARTLOW
Prosecuting Attorney                      112 S. Water Street, Suite C
                                          Kent, Ohio 44240
By: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1} Appellant, Jeremy Stutler, appeals the May 10, 2017 decision of the Stark County Court of Common Pleas denying his request for Level IV privileges pursuant to R.C. 2945.401. Appellee is the state of Ohio.

### STATEMENT OF FACTS AND THE CASE

{¶2} Appellant was charged with murder in 2011, and found not guilty by reason of insanity in the Stark County Court of Common Pleas. The trial court committed appellant to Twin Valley Behavioral Healthcare, a maximum security mental health facility. In January of 2014, appellant was transferred to Northcoast Behavioral Healthcare.

{¶3} A similar request was considered by this Court in 2015. On February 2, 2015, Dr. Joy Stankowski, M.D., the Chief Clinical Officer of Northcoast Behavioral Healthcare authored a letter requesting appellant be granted Level IV medical privileges for community trips with staff/case manager supervision.

{¶4} The State requested a second opinion from Dr. Arcangela Wood, a psychologist and the Director of Psycho–Diagnostic Clinic of Akron. Dr. Wood opined it would be reasonable for Appellant to be granted Level IV privileges; however, she listed a number of conditions at the end of the letter necessary for the granting of said privileges. Both parties stipulated to the reports at the May 4, 2015 hearing.

{¶5} Following the hearing on May 4, 2015, the trial court denied the request for a change to Level IV privileges via Judgment Entry of May 8, 2015. We agreed "*** with the reasoning set forth in *Hubbard*, supra, and [found] a trial court retains discretion to deny a request for increased privileges even if the evidence in opposition to the requested modification presented by the state does not rise to the level of clear and convincing

evidence." *State v. Stutler*, 5th Dist. No. 2015CA00099, 2015-Ohio-5518, ¶ 13.  We concluded that the trial court had not abused its discretion and affirmed the trial court's decision.

{¶6}    On January 27, 2017, Dr. Stankowski delivered a letter to the Stark County Common Pleas Court with an Application for Level IV Privileges, completed by Sara G. West, M.D., attached.[1] "The purpose of this report is to request an advancement in movement for Mr. Stutler, from Level III and Level IV medical, to Level III and Level IV medical and community." The record does not clearly describe the distinction between the two levels, though it is clear that there are fewer restrictions on Level IV and the intent was to allow the appellant supervised "off ground trips that are therapeutic" as well as "other appropriate events."  After reviewing records and information provided to her, Dr. West stated "[i]t is my opinion with reasonable medical certainty that, in consideration of public safety and Mr. Stutler's liberty interests, the least restrictive setting for Mr. Stutler's treatment is continued hospitalization at Northcoast Behavioral Healthcare with advancement to Level IV community privileges."

{¶7}    On February 24, 2017 the court ordered appellant to submit to an examination by the Psycho-Diagnostic Clinic.  On April 27, 2017, Arcangela S. Wood, Psy .D. of the Psycho-Diagnostic Clinic submitted a comprehensive 30 page report after meeting with appellant for 90 minutes on March 21, 2017. She was aware of the plan to allow appellant Level IV privileges in the community and she approved the plan contingent

---

[1] In the trial court's order of January 10, 2017, the court references a letter of December 12, 2016 from Northcoast Behavioral Healthcare to the court regarding a request for Level IV privileges but that letter was not in the record. Appellant filed a motion on January 5, 2017 requesting the court issue an order to Northcoast Behavioral Healthcare to produce a report regarding Level IV privileges and the January 10, 2017 entry granted that request.

upon adoption of several conditions to protect public safety. She also concluded that the risk of Mr. Stutler's committing any future violent acts was moderate, and that appellant would experience stress with the transition of going on supervised outings in the community and with increased contact with community members.

{¶8} The trial court conducted a hearing pursuant to R.C. 2945.401(D) on May 4, 2017. The aforementioned reports were submitted to the court and the testimony of Dr. Wood, Dr. West and appellant was presented to the court. At the conclusion of the hearing the court denied the request for Level IV privileges concluding in its entry of May 10, 2017 that "The Court is not convinced in this short time that improvement has advanced enough to Level IV Privileges." (Trial Court Entry, page 6). Appellant filed a notice of appeal on June 9, 2017 and submitted two assignments of error:

{¶9} I. THE TRIAL COURT'S DETERMINATION THAT APPELLANT SHOULD BE DENIED A CHANGE TO LEVEL IV-COMMUNITY PRIVILEGES IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶10} II. THE TRIAL COURT HAD NO DISCRETION TO DENY THE LEVEL CHANGE REQUESTED IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE INDICATING THAT THE LEVEL CHANGE SHOULD NOT BE GRANTED.

### STANDARD OF REVIEW

{¶11} We review the trial court's decision for an abuse of discretion.

The nature and conditions of the insanity acquittee's confinement are a determination which lies within the sound discretion of the trial court. *State v. Johnson* (1987), 32 Ohio St.3d 109, 112, 512 N.E.2d 652, 655–656. The trial court may choose to reject the recommendations of both the state and

the acquittee and order the acquittee to a more secure setting without abusing its discretion. *State v. Gladding* (1991), 72 Ohio App.3d 16, 21, 593 N.E.2d 415, 417–418. Furthermore, the court does not abuse its discretion by rejecting the recommendation of the hospital caring for the acquittee; rather, the court is assumed to have an independent role in the determination. *State v. Swiger* (June 6, 1995), Tuscarawas App. No. 94 AP 100073, unreported, 1995 WL 495393.

*State v. Crossan*, 122 Ohio App.3d 511, 514, 702 N.E.2d 157, 159 (4th Dist.1997).

{¶12} Appellant's tenure in the custody of the state and any adjustments to his status are controlled by the terms of R.C. 2945.401 which state in relevant part that:

(A)   A defendant found incompetent to stand trial and committed pursuant to section 2945.39 of the Revised Code or a person found not guilty by reason of insanity and committed pursuant to section 2945.40 of the Revised Code shall remain subject to the jurisdiction of the trial court pursuant to that commitment, and to the provisions of this section, until the final termination of the commitment as described in division (J)(1) of this section. * * *

* * *

(D)(1) Except as otherwise provided in division (D)(2) of this section, when a defendant or person has been committed under section 2945.39 or 2945.40 of the Revised Code, at any time after evaluating the risks to public safety and the welfare of the defendant or person, the designee of the department of mental health and addiction services or the managing officer

of the institution or director of the facility or program to which the defendant or person is committed may recommend a termination of the defendant's or person's commitment or a change in the conditions of the defendant's or person's commitment.

* * *

(G) In a hearing held pursuant to division (C) or (D)(1) of this section, the prosecutor has the burden of proof as follows:

***

(2) For a recommendation for a change in the conditions of the commitment to a less restrictive status, to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person.

(H) In a hearing held pursuant to division (C) or (D)(1) or (2) of this section, the prosecutor shall represent the state or the public interest.

(I) At the conclusion of a hearing conducted under division (D)(1) of this section regarding a recommendation from the designee of the department of mental health and addiction services, managing officer of the institution, or director of a facility or program, the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly.

{¶13} We reviewed the trial court's denial of a similar request in 2015 and, in affirming the trial court's decision, we found "a trial court retains discretion to deny a request for increased privileges even if the evidence in opposition to the requested modification presented by the state does not rise to the level of clear and convincing

evidence." *State v. Stutler, supra*, at ¶ 13. We see no reason to alter our finding in this case and continue to hold that the trial court retains its discretion even if the prosecutor opposes the change and does not provide clear and convincing evidence of a threat to public safety or a person.

{¶14}  Appellant contends that the state has failed to provide clear and convincing evidence of a threat to public safety or a threat to the safety of any person and, as a result, the trial court has no discretion to reject the recommendations of Northcoast Behavioral Healthcare and must therefore grant the requested privileges.  Such an interpretation of the Code would render a portion of R.C. 2945.401 meaningless and would be inconsistent with related portions of Chapter 2945.

{¶15}  Revised Code Section 2945.401(I) states:

> At the conclusion of a hearing conducted under division (D)(1) of this section regarding a recommendation from the designee of the department of mental health and addiction services, managing officer of the institution, or director of a facility or program, **the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly.** (Emphasis added).

{¶16}  This grant of discretion is not contingent upon any proof, but is a clear and unambiguous grant of discretion to the trial court.  The appellant contends that the discretion vanishes if the prosecutor does not carry its burden, but the language of the Code does not support that result.  While R.C. 2945.401(G)(2) does state that the prosecutor has the burden of proof "to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any

person" that section does not restrict the trial court's actions. Compare the provisions from R.C. 2945.40 which provide a requirement of clear and convincing evidence and remove the trial court's discretion:

> * * * if the court finds there is not clear and convincing evidence that the person is a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order, the court shall discharge the person*****
>
> (F) If * * * the court finds by clear and convincing evidence that the person is a mentally ill person subject to court order, the court shall commit the person* * *

R.C. 2945.40(E), (F)

{¶17} An analogous limitation to discretion is found in the civil commitment statutes:

> (B) Unless, upon completion of the hearing the court finds by clear and convincing evidence that the respondent is a mentally ill person subject to court order, it shall order the respondent's discharge immediately.
>
> (C) If, upon completion of the hearing, the court finds by clear and convincing evidence that the respondent is a mentally ill person subject to court order, the court shall order the respondent for a period not to exceed ninety days to ***

R.C. 5122.15(B), (C). See also R.C. 5924.504(A)(2) and R.C. 118.04(C).

**{¶18}** The Legislature did not include a mandated action in R.C. 2945.401, but instead expressly preserved the discretion of the trial court. Protecting the trial court's discretion is more consistent with our obligation to "read words and phrases in context and construe them in accordance with rules of grammar and common usage' " *State ex rel. Barley v. Ohio Dept. of Job & Family Servs.*, 132 Ohio St.3d 505, 2012-Ohio-3329, 974 N.E.2d 1183, ¶ 20, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11 and to give effect to every word and clause in the statute when we are seeking to interpret legislative intent." *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18.

**{¶19}** Appellant cites to the holding of the 11th District in *State v. Hubbard*, 11th Dist. Trumbull No. 97-T-0144, 1999 WL 1080755 (Hubbard I) in support of his assertion that the failure to submit clear and convincing evidence robs the trial court of discretion. That court stated:

> "However, in apparent reaction to the Supreme Court of Ohio's holding in *Johnson*, the Ohio General Assembly enacted R.C. 2945.401(G)(2) requiring the state to prove, by clear and convincing evidence, the threat to public safety from a recommended change in the conditions of commitment to a less restrictive setting.

*State v. Hubbard*, at *4.

The Court in *Johnson* held that:

> *109 Where the sole determination to be made is whether an insanity acquittee, already established as being a mentally ill person subject to

hospitalization by court order, should be transferred to a less restrictive treatment setting, no party has the burden of proof. \*\*\* The determination of whether the person should be transferred from his current commitment setting to a less restrictive placement is within the sound discretion of the trial court.

*State v. Johnson*, *supra,* syllabus.

**{¶20}** Revised Code 2945.401was enacted in S.B. No. 285, 1996 Ohio Laws 258 and both 2945.401(G)(2) and (I) were contained in the statute as they currently appear. Neither section was a later amendment of the Code, nor has either been amended since adoption. Considering our mandate to give meaning to all words in the Code and the simultaneous enactment of the relevant sections of the Code, we believe the more reasonable interpretation of R.C. 2945.401 is that it was designed to address the lack of the assignment of a burden of proof identified by the *Johnson* court while still explicitly retaining the discretion described in that case. Any attempt to constrict the discretion of the trial court by imposing a prerequisite of clear and convincing evidence improperly amends the statute by adding language not included by the Legislature. We must "give effect to the words used, not to delete words used or to insert words not used." *Cleveland Elec. Illum. Co. v. Cleveland* 37 Ohio St.3d 50, 524 N.E.2d 441 (1988), paragraph three of the syllabus, as cited in *State v. Tuomala,* 104 Ohio St.3d 93, 2004-Ohio-6239, 818 N.E.2d 272, ¶¶ 11-12.

**{¶21}** The trial court's discretion is guided by an instruction to "give preference to public safety" when considering appellant's request, R.C.2945.40(F), but appellant's requirement that the court may only exercise its discretion when it finds an "unreasonable

risk to the public" is a misconstruction of the language of the Revised Code that conflicts with that obligation. Likewise, appellant's argument that trial court must find that the record contains clear and convincing evidence to deny the requested change and that, without that evidence, the trial court lacks any discretion and must grant the requested change is not supported by the unambiguous language of the Code. Appellant's interpretation will lead to an untenable situation for the trial court. Under the appellant's version, if the trial court concludes the evidence demonstrates that it is more likely than not that granting greater freedom to appellant will threaten public safety or the safety of an individual, the court would be powerless to act. Appellant's position will also eliminate the court's discretion to impose requirements on any grant of privileges and will create confusion where, as in the case before the court, the experts modify their opinion with specific, but different, contingencies that will affect the grant of privileges. The trial must retain discretion to resolve those differences and preserve public safety.

{¶22} For the forgoing reasons, we reject appellant's interpretation of the statute.

{¶23} We believe a better construction of the statute is provided by the concurrence of Judge Cannon in *State v. Hubbard*, 11th Dist. Trumbull No. 2013-T-0082, 2014-Ohio-4130 (Hubbard II):

{¶ 37} I concur with the opinion of the majority. I write separately to clarify this court's standard of review, due primarily to appellant's suggestion that the relevant statute was amended "in order to clear up confusion concerning the amount of discretion afforded a trial court in these types of proceedings * * *." However, appellant does not recognize that the amendment to the

statute only limited the discretion of the trial court in a manner that is adverse to appellant.

{¶ 38} R.C. 2945.401(E) indicates that, in making any determination, "the trial court shall consider all relevant factors, including, but not limited to * * *: (1) Whether, in the trial court's view, the defendant or person currently represents a substantial risk of physical harm to the defendant or person or others[.]" See, e.g., *State v. Roden,* 8th Dist. Cuyahoga No. 86841, 2006–Ohio–3679, ¶ 9.

*6 {¶ 39} I believe the legislative intent behind R.C. 2945.401 has always been to give the trial court broad discretion in approving changes in the course of treatment for those persons committed under R.C. 2945.39 or R.C. 2945.40. However, the statute was amended to include a method by which the state can object and thus prevent the trial court from releasing an institutionalized individual or from allowing a proposed, less restrictive status. R.C. 2945.401(G)(2). If the state establishes, by clear and convincing evidence, that the requested change is "a threat to public safety or a threat to the safety of any person," the trial court no longer has discretion to approve the proposed, less restrictive status. Id.

{¶ 40} Some of the cases reviewing this issue suggest that there must be clear and convincing evidence before the trial court is permitted to disapprove movement to a less restrictive status. See, e.g*., State v. Aduddell,* 5th Dist. Stark No.2010–CA–00137, 2011–Ohio–582, ¶ 33–34. However, I do not believe that is how the statute was intended to be applied.

The trial court's discretion is only limited, pursuant to R.C. 2945.401(G)(2), if the state establishes "by clear and convincing evidence that the proposed change represents a threat." If, however, the state does not meet its burden of proof, it is still within the trial court's discretion to disapprove the proposed, less restrictive status.

*State v. Hubbard*, at ¶¶ 37-40

**{¶24}** We approved this construction of R.C. 2945.401 in *State v. Stutler, supra.*

**{¶25}** Appellant contends that because the concurrence is dicta, we should refrain from adopting its rational in this case. We are cognizant of the nature of the concurrence, but dicta in one matter can be persuasive in another, and we find this is one of those circumstances. *Rauhaus v. Buckeye Local School Dist. Bd. of Educ.,* 6 Ohio St.3d 320, 323, 453 N.E.2d 624 (1983); See also *State v. Rhein*, 5th Dist. Holmes No. 97CA591, 1999 WL 1071672, *3 (Sept. 29, 1999). This interpretation gives meaning to all parts of the relevant code section, preserves the trial court's discretion, and provides a limitation to the discretion that preserves public safety but does not infringe on appellant's rights. If the prosecutor supplies the court with clear and convincing evidence of a threat to safety, we expect that will have an impact on the court's discretion. However, when the evidence falls short of clear and convincing evidence, the trial court may exercise its discretion to ensure preservation of the public safety. This discretion will not be unlimited and must focus on public safety and may consider other factors such as those listed in 2945.40 (E).

**{¶26}** Judge Cannon's concurrence in *Hubbard* suggests that our opinion in *Aduddell, supra* is inconsistent with this interpretation of the statute. The facts in *Aduddell* are not inconsistent with our determination that the trial court retains discretion to act

despite the absence of clear and convincing evidence. In *Aduddell* the appellant was to be transferred from "from his current maximum security setting to a locked civil unit at Heartland Behavioral Health" *Aduddell*, at ¶ 8 and we found that "[t]he state presented **no evidence** that appellant's transfer would put the public at risk. The state offered **no evidence** of Heartland's inability to properly house an insanity acquittee such as appellant." *Aduddell* at ¶ 33, (Emphasis added). Our focus was the lack of any evidence of a threat to safety. We did not have the opportunity to address whether the trial court retained any discretion as there was no need to do so.

{¶27} In contrast, the record of this case contains evidence of a threat to public safety and a threat to the safety of any individual. Dr. Wood of the Psycho-Diagnostic Clinic engaged in a 90 minute clinical interview of appellant, listed the records she reviewed and provided a comprehensive report regarding the history of appellant's illness and treatment. Dr. Wood also rated appellant on the HCR-20 violence risk assessment instrument and concluded that "Mr. Stutler's risk of future violence appears to be within the moderate range at the present." (Psycho-Diagnostic Report, p.29). She also noted that appellant's "mental illness constitutes a substantial disorder of thought, mood and perception" that can "grossly impair[ ] his judgement and behavior and the capacity to recognize reality. It also impairs his ability to meet the ordinary demands of life." (Psycho-Diagnostic Report, p.29). She notes his compliance with his medication and his improvement since his commitment and concludes that "[i]t is my opinion, with reasonable psychological certainly, that the least restrictive setting consistent with public safety and Mr. Stutler's treatment needs is commitment to Northcoast Behavioral Healthcare with level 4 movement." Dr. Wood supplemented her opinion by adding several suggested

rules for implementing Level IV privileges while preserving public safety. Despite apparent approval for Level IV privileges, Dr. Wood's hearing testimony contains a statement that weakens her support when she states: "My opinion, as indicated in my report, was that if the Court deemed it so, that he would be appropriate for Level IV movement." (Transcript, 05/14/17 Hearing, p. 9, lines 18-21). That phrase, "if the Court deemed it so" is troubling as it indicates doubt or uncertainty in her opinion or, perhaps, recognition that the court must evaluate all of the information provided to it to make a final decision.

**{¶28}** The report of Dr. West of Northcoast Behavioral Healthcare does little to address public safety and instead focuses on the progress of the appellant and what would be in his best interest. Revised Code 2945.401(D)(1) mandates that Dr. West evaluate "the risks to public safety" prior to submitting an application for a change in status, but the only reference to public safety is an oblique reference on page four of the report where Dr. West states: "It is my opinion with reasonable medical certainty that, in consideration of public safety and Mr. Stutler's liberty interests, the least restrictive setting for Mr. Stutter's treatment is continued hospitalization at Northcoast Behavioral Healthcare with advancement to Level IV community privileges." Dr. West did not provide any assessment regarding appellant's future risk of violence and, while her report does contain some limitations on the grant of Level IV privileges, those suggestions do not incorporate all of the requirements imposed by Dr. Wood's opinion. Considering R.C. 2945.40(D)(1)'s requirement that Northcoast behavioral health make a report "after evaluating the risk to public safety" the absence of any express reference to that evaluation is concerning.

**{¶29}** We find that the trial court retains its discretion to either approve or disapprove the application for a change in status at the conclusion of a hearing under R.C. 2945.401(D) and that, in the case sub judice, the trial court did not abuse that discretion in finding that appellant continues to be mentally ill, must be confined to Northcoast Behavioral Healthcare and that the requested Level IV Privileges create a threat to public safety or the safety of an individual and must be denied.

**{¶30}** The decision of the Stark County Court of Common Pleas is hereby affirmed. Costs are assessed to appellant.

By: Baldwin, J.

John Wise, P.J. and

Gwin, J. concur.